IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

**MARK ANTHONY JACKSON, II,**

      **Plaintiff,**

v.                                                                          Case No. 3:22-cv-00452

**UNIT MANAGER MOORE, et al,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Plaintiff Mark Anthony Jackson, II, proceeding *pro se*, seeks relief under 42 U.S.C. § 1983 for alleged violations of his rights by staff at the Western Regional Jail and Correctional Facility ("WRJ") in handling his legal mail. Pending before the Court are a Motion to Dismiss by the Secretary of State, (ECF No. 20); a Motion to Dismiss by Defendants Moore, Active Superintendent of the WRJ Aldridge, and Petticrew, (ECF No. 23); and a second Motion to Dismiss by Defendants Moore, Active Superintendent of the WRJ Aldridge, and Petticrew. (ECF No. 38). This case is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the following reasons, the undersigned respectfully **RECOMMENDS** that the Motions to Dismiss of Secretary Warner, (ECF No. 20), and Defendants Moore, Aldridge, and Petticrew, (ECF Nos. 23, 38), be **GRANTED**; that Plaintiff's Complaint, (ECF No. 2), be **DISMISSED**; and that this matter be **REMOVED** from the docket of the Court.

1

I.      **Relevant History**

Jackson filed this action on October 14, 2022, while housed at the WRJ in Barboursville, West Virginia. (ECF No. 2 at 1). In his complaint, Jackson alleges that staff at the WRJ open his legal mail, provide him with a copy of the documents inside, throw the originals on a cart, and wheel them away, purportedly to be shredded. (*Id*. at 4). He claims that the staff use this procedure inconsistently; for example, giving him original mail from the Carroll County Kentucky Courts, but only copies of mail from his attorney. (*Id*. at 4-5). When Jackson brought the issue to the attention of "higher ups," he was told that the West Virginia Secretary of State implemented this procedure. (*Id*. at 5-6). Jackson states that he filed a grievance, complaining about the WRJ's practice of providing inmates with only the copies of their legal mail and destroying the originals outside of their presence, which he claims are violations of his First and Sixth Amendment rights. (*Id*. at 6, 9). The grievance was denied, and Jackson was told that all West Virginia Division of Corrections and Rehabilitation ("DCR") facilities photocopy incoming legal mail and destroy the originals unless the sending attorney adds a code to the envelope to ensure the inmate receives the original. (*Id*. at 9). Jackson appealed the denial, and his grievance was again rejected for the same reason. (*Id*.). Jackson complains that when WRJ staff take original legal mail outside the presence of an inmate, it allows staff to read the mail and potentially interfere with the inmate's court cases. (*Id*. at 6). Jackson seeks injunctive relief to correct the WRJ's mail handling practices and prevent future constitutional violations by enforcing training requirements for the DCR. (*Id*. at 5).

On December 17, 2022, Secretary of State Mac Warner filed a Motion to Dismiss and a supporting Memorandum. (ECF Nos. 20, 21). Secretary Warner asserts that the complaint should be dismissed against him, because he has no official or personal

2

connection with the mail policies, procedures, and practices at the WRJ or the DCR. (ECF No. 21). Secretary Warner points out that while Jackson sues the defendants in both their personal and official capacities, he asks only for injunctive relief, which is a claim appropriately lodged against the official responsible for enforcing the challenged governmental action. (*Id.* at 2). Given that the management of the state's correctional facilities is statutorily delegated to the Commissioner of the DCR, and not the Secretary of State of West Virginia, the former rather than the latter is the proper official to name as a party in this action. (*Id.* at 3).

Jackson filed a response in opposition to Secretary Warner's request for dismissal, arguing that he was told by personnel at the WRJ that the Secretary of State did play a role in the handling of legal mail. (ECF No. 25). He attached a copy of his grievance form in support of his contention. (*Id.* at 4). In his reply memorandum, Secretary Warner noted that the grievance form identifies the "Secretary" in question as "Secretary Sandy," who is Jeff S. Sandy, Cabinet Secretary of the West Virginia Department of Homeland Security, which is the Department under which the DCR falls in West Virginia's governmental structure. (ECF No. 26 at 2). Secretary Warner reiterates that neither he, nor his office, has any connection to the challenged governmental policy or procedure and, therefore, he should be dismissed.

On December 21, 2022, Defendants Moore, Active Superintendent of the WRJ Aldridge, and Petticrew filed a Motion to Dismiss and supporting Memorandum. (ECF Nos. 23, 24). They assert that the complaint should be dismissed against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The defendants acknowledge that Jackson has constitutional rights related to his inmate mail, but they contend that his rights have not been violated. (ECF No. 24). In support of their position,

3

they attach two exhibits, including the mail policy used at the WRJ in October 2022 and an affidavit of Superintendent Carl Aldridge explaining how legal mail is handled at that facility. (ECF Nos. 23-1, 23-2). The policy states that all "privileged" incoming mail, which includes letters from attorneys and courts, "will be opened by staff and searched for contraband in the presence of the inmate." (ECF No. 23-1 at 2). Aldridge further explains that while the policy is silent about copying privileged mail, the practice at the WRJ has been to take the mail to the inmate on a rolling cart, open the mail in front of the inmate, copy the mail, and shred the original with a shredder that is on the cart. (ECF No. 23-2 at 1–2). If the inmate is in segregation, the mail is opened in the inmate's view through the cell window. (*Id.* at 2). If the shredder on the cart is not working, the original mail is placed on the cart and taken to another location to be shredded. (*Id.*).

Defendants argue that Jackson has not sufficiently pled any constitutional violation, nor has he included any factual allegations demonstrating an adverse consequence related to the mail policy and procedures at the WRJ. (ECF No. 23 at 1). As to Jackson's request for injunctive relief, Defendants emphasize that the DCR as it exists today was created by legislation effective July 1, 2018. (ECF No. 24 at 2). This legislation consolidated the former Division of Corrections ("DOC"), the Regional Jail and Correctional Facility Authority ("RJA"), and the Division of Juvenile Services ("DJS"). (*Id.* at 2). When the three agencies were separate, they had different policies and practices governing operations. For example, the mail handling policy used by the WRJ in October 2022 was legacy RJA Policy and Procedure Statement #16002. At the same time, inmate mail at West Virginia correctional centers was governed by legacy DOC Policy Directive 503.00, and by the time of the briefing in December 2022, the DCR was in the process of finalizing a new, unified mail policy for all DCR facilities. (*Id.*). Accordingly, the policies

4

were in a state of flux. Nonetheless, the defendants contend, again, that Plaintiff has not presented any factual allegations demonstrating that the fluid state of the policies caused him an injury. He has not asserted that any of his legal cases were hindered, or that he was precluded from accessing the courts, nor has he claimed any particular breach of attorney/client privilege. (ECF No. 24 at 5-7). According to Defendants, Jackson's claim that his attorney/client privilege was breached each time the WRJ staff removed his original legal mail from his presence does not constitute a violation of constitutional dimension until Jackson can show "at least a realistic possibility of injury to [him] or benefit to the state." (*Id*. at 6).

In January 2023, Jackson informed the Court that he had been transferred to the Huttonsville Correctional Center in Huttonsville, West Virginia. (ECF No. 30 at 1). On February 24, 2023, Jackson filed a response in opposition to the Motion to Dismiss of Moore, Aldridge, and Petticrew. (ECF No. 33). Jackson argues that Aldridge essentially admits in his affidavit that original legal mail is left with staff, who can then read it before shredding it. (ECF No. 33 at 2). He surmises that once staff sees the information in the confidential attorney correspondence, staff can relay it to judges, law enforcement officers, and prosecuting attorneys; particularly, as correctional staff routinely work with these individuals during video court appearances. Jackson indicates that legal mail should never be permitted to leave the inmate's presence to be read by correctional staff, as this is clearly a violation of the inmate's constitutional rights. (*Id*.).

In response to Jackson's transfer to Huttonsville, the Court entered an order on March 10, 2023, directing the parties to submit memoranda addressing whether Jackson's case had been rendered moot by his transfer to another facility, which was subject to a different policy and procedure, as well as potentially to different mail handling

practices. (ECF No. 36). The parties' memoranda were due by March 31, 2023; however, none of the parties submitted memoranda by that deadline. On April 5, 2023, Defendants Moore, Active Superintendent of the WRJ Aldridge, and Petticrew submitted a Motion for Extension of Time—explaining that a screening error resulted in the March 10 Order landing in Defendants' junk folder—alongside a Motion to Dismiss and a Memorandum of Law on the Issue of Jurisdiction and Mootness. (ECF Nos. 37–39). The Court granted the Motion for Extension of Time. (ECF No. 40).

In their Memorandum of Law, Defendants state that the mail policy, and the practices at the WRJ about which Jackson complains, are no longer in effect. The new policy—Policy Directive 503—promulgated by the DCR, specifically exempts attorney-client mail from being copied and destroyed. (ECF No. 39 at 7). Original attorney-client mail may only be copied and destroyed if it appears to have been tampered with, contain contraband, or is otherwise suspicious. (ECF No. 38-1 at 5). The policy requires DCR staff to take additional steps in regard to attorney-client mail; including, (1) making efforts to verify the authenticity of the mail, (2) submitting an incident report detailing the reason why an inmate is not given original attorney-client mail, (3) forbidding staff from reading the contents of attorney-client mail except under specific circumstances and with notice and appeal right to the inmate, and (4) increasing the documentation surrounding attorney-client mail. (*Id.* at 5-6). Policy Directive 503 went into effect on February 1, 2023. (*Id.* at 1). Additionally, the Memorandum discloses that, while Jackson had been in segregated custody at the WRJ, he is housed with the general population at Huttonsville; consequently, his mail is not currently subject to any additional safety restrictions that may have applied to the segregated housing unit. (*Id.*). Although given an opportunity to respond to Defendants' recent Motion to Dismiss and supporting Memorandum, or to

6

supply his own brief on the issue of mootness, Jackson has done neither.

## II.     Standard of Review

Secretary of State Warner and Defendants Moore, Active Superintendent of the WRJ Aldridge, and Petticrew submitted their first Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), indicating that Plaintiff has failed to state a plausible claim against them. A Rule 12(b)(6) motion tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (explaining that, to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). In resolving the motion, the court must assume that the facts alleged in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). However, "[the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do," and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When analyzing a Rule 12(b)(6) motion, the court may consider any exhibits attached to the complaint and documents explicitly incorporated by reference. Fed. R. Civ. P. 10(c) ("A copy of a written instrument

that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Conner v. Cleveland Cnty., N. Carolina*, 22 F.4th 412, 428 (4th Cir. 2022) (citing *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016)).

Courts are required to liberally construe *pro se* complaints. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Defendants Moore, Aldridge, and Petticrew filed their subsequent Motion to Dismiss based on mootness under Federal Rule of Civil Procedure 12(b)(1), which challenges a court's subject matter jurisdiction over the pending dispute. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A Rule 12(b)(1) motion can be presented in two ways. First, the movant may contend that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams*, 697 F.2d at 1219. When presented with this contention, the court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* Second, the movant may raise a factual attack against the complaint, alleging that the jurisdictional allegations of the complaint are not true. *Id.* Then, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."

8

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams*, 697 F.2d at 1219). The burden of proving that a court has subject matter jurisdiction rests with the petitioner, as he is the party asserting it. *Johnson v. N. Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012). However, the court should grant dismissal "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

A motion to dismiss under Rule 12(b)(1) is the appropriate avenue by which to raise the issue of mootness, because mootness generally deprives a federal court of jurisdiction under Article III of the United States Constitution. *See Justice v. Acosta*, No. 2:17-CV-03681, 2018 WL 4291744, at *3 (S.D.W. Va. Sept. 7, 2018); *see also Estate of Peeples v. Barnwell Cty. Hosp.*, No. CIV.A. 1:13-01678, 2014 WL 607586, at *5 (D.S.C. Feb. 18, 2014) (collecting cases). Here, defendants are bringing a factual challenge to this Court's jurisdiction over the complaint, alleging that subsequent developments have removed the factual basis for jurisdiction. As such, this Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *See L.K. ex rel. Henderson v. N. Carolina State Bd. of Educ.*, No. 5:08-CV-85-BR, 2011 WL 861181, at *4 (E.D.N.C. Feb. 18, 2011), *report and recommendation adopted*, No. 5:08-CV-00085-BR, 2011 WL 861154 (E.D.N.C. Mar. 9, 2011).

### III. Discussion

#### A. Dismissal of Secretary Warner

Jackson named the Secretary of State as a defendant in this action, in his personal and official capacities. (ECF No. 2). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). In contrast, official-capacity suits

"generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* at 165. Jackson has not included any allegations that would implicate Secretary Warner in his personal capacity. Indeed, Secretary Warner was only joined in the case based upon some confusion as to the government official who allegedly told WRJ staff to copy inmate mail. Jackson understood the official to be the Secretary of State, while the grievance form clarified the official to be the Secretary of Homeland Security, Jeff Sandy. Apart from Jackson's misunderstanding, there is nothing in the record to suggest that Secretary Warner participated in mail handling at the WRJ, spoke to any of the mail handlers, wrote the legacy mail policy used at the WRJ, developed the allegedly objectionable practices followed by the defendants, or had any responsibility for overseeing the mail policy and procedures used by the WRJ or the DCR. To the contrary, under the statutory laws of the State of West Virginia, his involvement in such activities would exceed the scope of his duties and would be unauthorized. Therefore, the undersigned **FINDS** no factual basis to support a claim against the Secretary of State in his personal capacity, and any such claim must be dismissed.

With respect to the official-capacity claim against Secretary of State Warner, again it appears likely that this claim stems from confusion on Jackson's part—Cabinet Secretary Jeff Sandy, not Secretary Warner, bears broad responsibility for the policies at the WRJ. *See* W. Va. Code § 15A-1-9 (establishing the Department of Homeland Security as a criminal justice agency within the Executive Branch of the State of West Virginia, with its chief executive officer being the Secretary of the Department of Homeland Security). In his Motion to Dismiss, Secretary Warner confirms that he has no official connection to or authority over the handling of inmate mail at any DCR facilities. (ECF No. 21). The Secretary's statutory authority covers record-keeping for the state's executive

branch; there is no reason to believe that the Secretary would have the authority to control prison mail-handling policy, which is within the discretion of the Commissioner of the DCR. *See* W. Va. Code § 5-2-1; § 15A-5-3(b). Because Jackson's requested relief is a change in the WRJ's mail-handling practices, and the Secretary of State has no statutory authority over, or involvement in those practicies, a suit against the Secretary of State will not redress Jackson's injuries. Therefore, the undersigned **FINDS** that Jackson fails to state a plausible official-capacity claim against Secretary of State Mac Warner, and he should be dismissed from this lawsuit. *See Akins v. United States Trotting Ass'n,* No. 1:20-CV-1226, 2021 WL 8444364, at *1 (M.D. Pa. July 13, 2021) (dismissing defendant from action where defendant had no authority to enforce the relief sought by plaintiff); *Swan v. Bd. of Educ.*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013), citing *Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) ("Indeed, if a defendant does not have the authority to carry out the injunction, a plaintiff's claim for injunctive relief must be dismissed because the Court cannot enjoin a defendant 'to act in any way that is beyond [the defendant's] authority in the first place.'").

### B. Dismissal of Commissioner and Jividen

Two of the defendants named in Jackson's complaint, the Commissioner of the DCR and Betsy Jividen, have not been served with process. (ECF Nos. 16, 23). Jackson identified Betsy Jividen as the Commissioner, but she was no longer in that position at the time Jackson filed his complaint and was not located by the U. S. Deputy Marshal when he attempted service. (ECF Nos. 2, 16, 23). Plaintiff did not provide a service address for the new Commissioner, Brad Douglas; accordingly, he likewise was never served with the complaint. (ECF No. 23 at 1, n.1). Pursuant to Federal Rule of Civil Procedure 4(m), a defendant who is not served within 90 days after the complaint is filed must be dismissed

without prejudice from the action, unless the plaintiff shows good cause for failure to serve or the court grants additional time for service. Fed. R. Civ. P. 4(m). Jackson filed his complaint in October 2022, and the 90-day period for service has long since elapsed. Jackson has not demonstrated good cause for failure to serve and the Court has not granted additional time for service. Accordingly, the undersigned **FINDS** that the Commissioner of the DCR and Betsy Jividen should be dismissed from this lawsuit as service of process has not been effected upon them as required by the Federal Rules of Civil Procedure. In any event, as explained below, any claim against them is likely moot, precluding this Court's subject matter jurisdiction over the claim.

### C. Mootness

"The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction, which extends only to actual cases or controversaries." *Fleet Feet, Inc., v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021). Because mootness is jurisdictional, the court must consider it even when no party has raised the issue. *United States v. Ketter,* 908 F.3d 61, 65 (4th Cir. 2018). "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed and at the time it is decided." *Ross v. Reed,* 719 F.2d. 689, 694 (4th Cir. 1983). If circumstances change over the course of the lawsuit such that the controversy no longer exists, the federal courts are powerless to decide the case. *Reed,* 719 F.2d. at 694 (4th Cir. 1983). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

A prisoner's transfer to another facility will typically moot any claims for injunctive or declaratory relief, as the prisoner is no longer subject to the allegedly unconstitutional

conditions. *Incumaa v. Ozmint,* 507 F.3d 281, 286 (4th Cir. 2007)*; see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). "The reasons for finding mootness in such a context are clear. Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa* 507 F.3d at 287. Jackson's transfer certainly moots his claims against Moore, Aldridge, and Petticrew, asking that they be instructed to properly handle his mail, because these prison officials all work at the WRJ and, therefore, no longer have control over the handling of Jackson's legal mail. *Wallace v. Solomon*, 740 Fed. Appx 283, 284 (4th Cir. 2018) (holding prisoner's claim for injunctive relief against officials at his former prison were mooted by his transfer to another facility, while the claims against statewide officials could go forward); *Washington v. Fed. Bureau of Prisons*, No. 5:16-cv-03913-BHH-KDW, 2018 WL 6499514, at *3 (D.S.C. Aug. 6, 2018), report and recommendation adopted, No. CV 5:16-3913-BHH, 2018 WL 6061039 (D.S.C. Nov. 20, 2018) (holding prisoner's request for injunctive relief against FCI-Estill and FCI-Edgefield was mooted by his transfer to another facility, while claims against the BOP were not moot). There is no evidence in the record that Moore, Aldridge, or Petticrew now has, or will have, any control over the mail handling at Huttonsville Correctional Center; therefore, the undersigned **FINDS** that Jackson's claim for injunctive relief, seeking to have these defendants alter their method of handling his mail, is moot.

Jackson's remaining claim for injunctive relief, seeking to have the DCR change the procedure followed at the WRJ and properly train its staff in the handling of privileged mail, is also mooted by his transfer. As explained above, Jackson is no longer subject to the mail-handling procedures used by the staff at the WRJ, which arose from a legacy

mail-handling policy that was written before the creation of the DCR and was used exclusively in the State's regional jails. (ECF Nos. 23-1, ECF No. 23-2). Once Jackson was transferred to Huttonsville Correctional Center, his mail was processed under a legacy correctional center policy until February 2023, when the DCR implemented a new policy, written for use in all State jails and correctional centers. (ECF No. 38-1). Once removed from the offending procedures and allegedly "untrained" staff at the WRJ, Jackson "no longer ha[d] a legally cognizable interest in a judicial decision on the merits of his claim." *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007). The undersigned thus **FINDS** that Jackson's remaining claim for injunctive relief to correct the mail-handling procedure at the WRJ and train its staff is likewise moot. Accordingly, Jackson's complaint must be dismissed.

While not determinative, it is noteworthy that all DCR adult facilities are now functioning under a policy that should eliminate the procedure Jackson found concerning. The legacy regional jail policy contained only one line related to legal mail, which stated: "Privileged incoming mail (letters from attorneys, courts) will be opened by staff and searched for contraband in the presence of the inmate." (ECF No. 23-1 at 2). The policy did not provide any additional step-by-step guidance to the WRJ, leaving it to improvise on how to further handle privileged mail. Accordingly, the WRJ followed the procedure outlined by Defendant Aldridge in his affidavit. (ECF No. 23-2). It was this procedure that Jackson found objectionable, not the policy itself. In contrast to the now obsolete regional jail policy, the new DCR policy includes a detailed procedure that the staff must follow when handling privileged mail. (ECF No. 38-1). Accordingly, the new policy eliminates the need for improvisation by the facilities.

An exception to the mootness doctrine exists for claims that are "capable of

14

repetition, yet evading review." *Federal Election Commission v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007). However, "[j]urisdiction on the basis that a dispute is capable of repetition, yet evading review is limited to the exceptional situation in which (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Incumaa*, 507 F.3d at 289 (internal quotation marks and citations omitted). Jackson does not argue that his claims are "capable of repetition, yet evading review," nor would he be likely to succeed on such an argument. As he has been transferred from the facility wherein the complained of actions took place, to be again subject to the same conditions would require that (1) he be transferred back to the WRJ and (2) the WRJ would ignore the new DCR policy and insist on following a procedure that contravenes the policy. This chain of events is far too speculative to establish a reasonable expectation that Jackson will again face the conditions that he alleges occurred at the WRJ. Accordingly, the undersigned **FINDS** that Jackson's complaint has been rendered moot by his transfer and that no exception to mootness exists.

## IV. Proposal and Recommendations

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding District Judge accept and adopt the findings proposed herein and **RECOMMENDS** that Defendant Warner's Motion to Dismiss, (ECF No. 20), and Defendants Aldridge, Moore, and Petticrew's Motions to Dismiss, (ECF Nos. 23, 38), be **GRANTED**; Plaintiff's Complaint, (ECF No. 2), be **DISMISSED**; and this action **REMOVED** from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is

hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Robert C. Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff and counsel of record.

**FILED**: May 8, 2023

Cheryl A. Eifert
United States Magistrate Judge